THE EDGAR THOMPSON STEEL COMPANY, Appellant, *v.* BOYLSTON MUTUAL INSURANCE COMPANY, Respondent.

### May 23, 1882.

1. Insurance against damages caused by the perils of navigation will not cover losses which involve no damage to the insured goods, but which result from the fluctuations of prices.

2. In an action on a policy of marine insurance, an allegation in the petition that the iron insured was sunk in the river is not a statement of such facts as, in law, entitle the plaintiff to abandon as for a total loss.

3. If there is no authorized abandonment by the insured, and the insurer causes the goods to be delivered at their destination, there can be no recovery for the delay which caused the goods to arrive at their destination at a time when the price of the goods had declined.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

GIVEN CAMPBELL, for the appellant.
O. B. SANSUM, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The circuit court sustained a general demurrer to the plaintiff's petition, which is as follows : —

"Plaintiff states that it is a corporation existing under and in virtue of the laws of the state of Pennsylvania ; that defendant is a corporation existing under and in virtue of the laws of the state of Massachusetts, and, at the date hereinafter stated, was doing business in the state of Missouri by its duly authorized agent, as an insurance company aforesaid ; that defendant is justly and truly indebted to plaintiff in the full sum of $2,025.40, for this, to wit : that, on the twenty-first day of February, 1880, plaintiff was the owner of four hundred and seventy-five tons, of twenty-two hundred and forty pounds, of pig iron, then on the good barge ' Wilhelm,' one of the barges of the steam towboat ' Fearless,' of Gray's Iron Line, which left Sulphur Springs, Missouri, with said barge in tow, having said iron on board, about the eighteenth day of February, 1880, bound on a voyage from Sulphur Springs aforesaid, to Pittsburg, Pennsylvania, under consignment from the Pilot Knob Iron Company, to plaintiff at Pittsburg aforesaid ; that, on the twenty-first day of February, 1880, plaintiff applied to defendant, through its agent at St. Louis, Missouri, one Martin Collins, for insurance upon said iron on said barge, from Sulphur Springs aforesaid to Bessemer, Pennsylvania, a place a few miles beyond Pittsburg aforesaid, and defendant, in consideration of the premium of one-half of one per cent upon the sum insured to it paid, did cause plaintiff, as owner of said iron, to be insured against loss or damage upon said iron upon said barge, from Sulphur Springs aforesaid to said Bessemer, in the state of Pennsylvania, in the sum of $5,000, valuing said iron at $40 per ton of twenty-two hundred and forty pounds, subject to the conditions of its open policy of insurance, No. 4,042, issued by said defend-

ant to said Martin Collins, its agent authorized by defendant to enter risks for parties applying for marine insurance under said open policy, which open policy is not in the power, possession, or control of plaintiff, and hence cannot be filed with this petition ; that among the perils insured against by said policy 4,042, are those of the rivers, and all other perils, losses, and misfortunes that have or shall come to the injury, detriment, or damage of said property, or any part thereof, by reason of the dangers aforesaid ; and by the terms of said policy, defendant agreed to pay to the assured all its loss or damage by any of the perils insured against, sixty days after proof of loss made by plaintiff to defendant, and proof of said plaintiff's interest in said shipment. And plaintiff says that defendant, by its said agent at St. Louis, Missouri, did deliver to plaintiff, as evidence of said contract of insurance, a certain certificate of insurance in writing, dated St. Louis, Missouri, February 21, 1880, No. 121, herewith filed, whereby it was certified that said Martin Collins, agent of defendant, had, on said day, entered for plaintiff in his open policy No. 4,042 with defendant, a risk of $5,000 on shipment of pig iron, at $40 per ton of twenty-two hundred and forty pounds, on board said barge ' Wilhelm,' at and from Sulphur Springs to Bessemer, loss, if any, payable to assured or their order on presentation of said certificate, and certified that said agent had advised said defendant of this insurance and issuance of said certificate, as aforesaid, as required by the terms of said policy, which said certificate was signed and delivered by said agent to said assured, the plaintiff. And plaintiff says that said defendant accepted said risk and ratified said act of its agent, and received, through its agent, said premium.

"And plaintiff says that, while it was owner of said iron in transit upon said voyage upon said barge, said barge was suddenly sunk at or near the head of Blue River Island, on the Ohio River, by a peril of the river, by striking a snag or log in the river at said place with such force as to knock a hole in her and cause her to sink in deep water, and that said barge

was shipwrecked by said accident, and broken to pieces with said iron on board; that by reason of said sinking, said iron of plaintiff on said barge was submerged in the Ohio River at said place, and remained in this condition a great while; that plaintiff gave notice at once to said defendant and said agent of said sinking of said barge and iron, and made claim upon said defendant for a total loss of same, which defendant refused to recognize or allow, although payment was duly demanded of defendant by plaintiff. And plaintiff says defendant waited a great while, until the river receded, and then caused said iron to be raised from where it lay in the river, and caused the same to be forwarded by another barge to plaintiff at Pittsburg aforesaid, at which place it arrived on or about the sixteenth day of July, 1880, in a damaged condition, and at which time it was tendered to the plaintiff by the defendant. And plaintiff says that then and there, expressly reserving all its rights under its said contract with defendant, and in no manner waiving its claim against the defendant, as the insurer of said iron, for loss or damage on same, it caused the said iron to be valued at the then market price for said iron at Pittsburg aforesaid, and received said iron as of said value, which was then $23.50 per ton of twenty-two hundred and forty pounds. And plaintiff says but for said accident and submergence of said iron, it would have reached the port of Pittsburg with the other barges of said tow, on the eighth day of March, 1880, which would have been the usual and a reasonable time for said voyage, and that on said eighth day of March, 1880, said iron was worth, in the market at Pittsburg, Pennsylvania, $43 per ton. And plaintiff says that, by reason of said sinking of said barge and iron, and the delay caused by said submergence by said peril of the rivers, it lost by decline in market value, from said eighth day of March, 1880, to the sixteenth day of July, 1880, the day of the arrival aforesaid, the difference in value between $40 per ton, as valued in said insurance contract, and its market value on that day, $23.50 per ton, the full sum of

$7,696.50.   And plaintiff says that said iron was insured in
other companies in the sum of $14,000, and that defendant's
proportionate part of said loss was and is the sum of $2,025.40.
And plaintiff says that it has caused due proofs of said
loss, showing said loss and plaintiff's claim therefor, and
its interest in said shipment and defendant's contributory
portion of said loss, to be made and delivered to defendant,
in accordance with the terms and conditions of said insur-
ance contract, and has presented said certificate to defend-
ant, duly indorsed, for payment, and demanded payment
of said sum due ; and although plaintiff has fully complied
with all the requirements of said contract of insurance, and
performed all the conditions of said policy on its part to be
performed, and although more than sixty days have elapsed
since the said proofs were furnished to defendant, yet de-
fendant has wholly failed to pay same or any part of said
sum so due plaintiff as aforesaid, which, with interest at
the rate of six per cent per annum thereon from December
14, 1880, is due from defendant to plaintiff.   Wherefore
plaintiff asks judgment for said sum of $2,025.40 and in-
terest as aforesaid, and all costs.''

It is evident, on a reading of this petition, that the plain-
tiff does not claim indemnity for a loss of its property.   The
property was not lost, nor any part of it, but was all deliv-
ered to the plaintiff.   Nor is any claim properly asserted
for damage or injury to the property insured .   It is said to
have arrived at Pittsburg `` in a damaged condition ; '' but
this fact is not connected with any claim of damages on that
account, nor does it appear that the alleged condition was
caused by any of the perils insured against.   For aught
that appears, the damage may have arisen after the iron
was raised from the water.   The only claim for indemnity
in the petition is on account of a loss resulting to the plain-
tiff from a fall in the market price of iron, during the period
when its transportation was retarded by the sinking of the
barge.

It is familiar law, that an ordinary insurance promises

no indemnity for remote and consequential losses. The policy is a guaranty against a loss or losses distinctly specified, provided such loss or losses shall be produced by a cause or causes also specifically described. There may be an insurance against loss in the value of goods by a falling market. But this will provide no indemnity for a loss of the goods by fire or water. There may, on general principles, be an insurance against delay in transportation, by reason of the perils of navigation. But this would afford no security against a loss resulting from the same perils, in the wetting, moulding, or change of flavor of the goods transported. So, *e converso*, it is safe to say, that an insurance against injury, detriment, or damage to the goods, caused by the perils of navigation, will secure no indemnity against losses from delay caused by the same perils, not involving any injury, detriment, or damage to the goods. The necessity for thus discriminating may be more apparent when we reflect that in the case of an insurance against injury to the goods carried, resulting from the perils or exposures specified, the loss sustained by the owner is a direct result of such perils or exposures, as its sole and exclusive cause. But, in the same case, a loss in value, consequent upon a falling market, combined with a delay in transportation, is due, in part at least, to something else besides the causes specified in the guaranty. It results also from the fluctuations of commerce, which have nothing to do with the perils of navigation.

The petition in this case describes the contract as creating an insurance " against loss or damage upon said iron, upon said barge from Sulphur Springs aforesaid to Bessemer," etc. This description is further amplified, as comprehending, for causes of loss, all perils of the rivers, " and all other perils, losses, or misfortunes that shall come to the injury, detriment, or damage of said property, or any part thereof, by reason of the dangers aforesaid." Surely, no labored analysis can be necessary to show that these expressions cover no liability whatever, except for such loss,

injury, detriment, or damage as may happen to the iron itself, while upon the barge, or between the points of shipment and destination. Nothing is said about delay or its consequences, whether caused by the perils mentioned, or otherwise. The entire guaranty, in short, is that the iron shall arrive, whole and uninjured, at Bessemer. As to when this shall be, or whether upon a steady, a falling, or a rising market, the contract is silent. We cannot see, from the showing in the petition, that the insurers were, at the commencement of this suit, in any default upon the terms of their engagement.

But have any after-acquired rights arisen, from the acts of the parties at the time of the disaster on the river? A loss of the iron, whether total or partial, would of course be within the terms of the policy. If, while the iron was at the bottom of the river, a right of action on the policy had accrued to the plaintiff as for a loss of the goods insured, no subsequent event, other than payment or discharge, could take that right away. The delivery of the iron afterwards could only operate as a payment upon the loss, *pro tanto*, at the then market value of the goods. These considerations bring up the question of the right of abandonment. As already stated, the allegation of " damaged condition " is not so framed in the petition as to assert any claim for a partial loss.

When property covered by marine insurance is wholly destroyed by fire, or sunk in the depths of the ocean, so that there can be no recovery, the duty of payment for the loss follows, without further condition. But if the property be so injured, or be placed in such imminent peril, or be so surrounded by opposing natural forces, that all the strong probabilities are against a possible rescue of as much as one-half in value, the insured may generally treat the case as one of constructive total loss, and may claim payment on that basis, upon abandoning the property, or what remains of it, to the insurer, who will make the most he can of it. By the English doctrine, the facts may at one time justify

an abandonment, and yet subsequent events, as a rescue, etc., may deprive the assured of all its benefits. But the American doctrine holds that when the right has once attached the assured cannot afterwards be deprived of it. Under either rule, however, it is requisite to the right of abandonment, in the first instance, that the loss be total, either actually or in the highest degree of probability. *Anderson* v. *Wallis*, 2 Mau. & Sel. 240 ; *Bradlie* v. *Insurance Co.*, 37 U. S. 378. The mere act of abandonment confers no right on the assured, unless it be accepted by the insurer, or be done under circumstances which render the right unquestionable.

In the present case, if the property insured had been destructible by immersion in water, as sugar, salt, etc., the plaintiff's right of abandonment and of recovery for a total loss might have been clear upon the sinking of the barge, as described. Or, had the sinking occurred in the Atlantic Ocean, beyond the reach of known means for recovery, the effect would have been the same. But in the absence of any statement about the depth of the water, or other difficulties or obstacles in the way of recovery, and in view of the well-known appliances used for bringing up property from the bottom of inland streams, we cannot hold, as a matter of law, that the petition states such facts and circumstances as would have entitled the plaintiff to abandon, as for a total loss of the iron insured. The plaintiff has doubtless suffered from the consequences of the disaster. But this fact can entail nothing upon the defendant unless the defendant has failed to perform the conditions of its policy. That it has not so failed, appears in the facts that there was no lawful or authorized abandonment by the plaintiff, and that the defendant has secured the delivery of the insured property to the plaintiff, at the end of the intended voyage.

We are of opinion, therefore, that the demurrer was rightly sustained by the circuit court, and that the judgment must be affirmed. All the judges concur.